Lawrence Fred Zacker v. Commissioner. Geraldine M. Zacker v. Commissioner.
Zacker v. Commissioner
Docket Nos. 28309, 28310.
United States Tax Court
1953 Tax Ct. Memo LEXIS 152; 12 T.C.M. (CCH) 912; T.C.M. (RIA) 53275; August 12, 1953
*152 1. Petitioner Lawrence Fred Zacker operated a used car business in 1946 in Los Angeles, California. Petitioner had no books or records available to substantiate his return of income or deductions for the year 1946. The Commissioner by the use of the bank-deposit method has arrived at net income considerably higher than petitioners reported on their returns. Held, the Commissioner's use of the bank-deposit method is sustained though his determination as to amount of goods sold and cost of goods sold is changed to accord with the facts in evidence at the hearing. 2. Petitioner Lawrence Fred Zacker contributed $625 for his three children by his divorced wife, the children residing with their maternal grandparents in Iowa. Held, that Lawrence Fred Zacker has not sustained the burden of proving that he is entitled to exemptions for his three children by contributing more than one-half of their support in 1946. 3. Respondent in his determination of the deficiencies did not determine that petitioners fraudulently filed their returns with intent to evade tax. He did not impose fraud penalties. However, in an amended answer he made certain affirmative allegations of fraud and asked for *153 the imposition of 50 per cent fraud penalties. He now concedes that he has not proved fraud as to petitioner Geraldine M. Zacker but contends he has sustained his burden of proof as to petitioner Lawrence Fred Zacker. Held, respondent has not sustained his burden of proof of showing that part of the deficiency in the case of Lawrence Fred Zacker is due to fraud with intent to evade the tax. No fraud penalties will be imposed. 4. Respondent in his determination of the deficiencies has determined that each petitioner was negligent in filing his return and has imposed a penalty of five per cent for negligence under section 293 (a) of the Code. Held, respondent's determination of negligence penalties is sustained in the case of each petitioner. They have not offered sufficient evidence to overcome the presumptive correctness of respondent's determination. Raymond C. Simpson, Esq., for the petitioners. Charles H. Chase, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent has determined deficiencies and penalties in income taxes for the calendar year 1946, as follows: Docket
Negligence
Petitioner
No.
Deficiency
Penalty
Lawrence Fred
Zacker
28309
$15,742.65
$787.13
Geraldine M.
Zacker
28310
15,226.91
761.35
*154 Prior to the hearing respondent amended his answer in Docket No. 28309, and prayed as follows: "* * * that the Court determine that there are due from the petitioner for the taxable year 1946 the deficiency in income tax set forth in the statutory notice, plus an increased deficiency in the amount of $10,781.41; the 5 per cent negligence penalty set forth in the statutory notice, plus an increased negligence penalty in the amount of $539.07; and a 50 per cent fraud penalty in the amount of $13,262.03." In Docket No. 28310, prior to the hearing respondent amended his answer and prayed as follows: "* * * that the Court determine that there are due from the petitioner for the taxable year 1946 the deficiency in income tax set forth in the statutory notice, plus an increased deficiency in the amount of $10,373.90; the 5 per cent negligence penalty set forth in the statutory notice, plus an increased negligence penalty in the amount of $537.04; and a 50 per cent fraud penalty in the amount of $13,083.90." The petitioners are husband and wife who filed separate returns on the community property basis and the two cases are consolidated. On their 1946 individual tax returns petitioners *155 reported net income as follows: Net Income
Tax Due
Per Return
Per Return
Lawrence Fred Zacker
$4,321.78 $360
Geraldine M. Zacker
4,321.78
567
Respondent explained his adjustments in the original audit report for each petitioner as follows: "Sales "Sales were increased $59,578.58 as a result of an investigation, revealing that the taxpayer had considerably greater income from his business than was stated in his income tax return. "Ending Inventory "Taxpayer failed to include in ending inventory, the custom-built Cadillac which was purchased and charged to sales in 1946, in the amount of $4,000.00. This car was purchased from the estate of a local doctor. Taxpayer also had a Terraplane automobile which cost $350.00 and was purchased in 1946 and also charged to purchases. Both of these cars were in the taxpayer's possession at the close of 1946 and therefore should have been included in the ending inventory which taxpayer showed as none. "Reconditioning "Reconditioning costs were cut in half, 50% being allowed on the basis of an audit of previous years' income tax returns of the taxpayer, when it was revealed that approximately 1/2 of reconditioning *156 shown was actually performed. "Insurance "Insurance is reduced by 10%. This 10% portion is changed to personal use and is deemed very reasonable. No other changes were recommended as they appeared to be reasonable. "It is to be noted that the books of the taxpayer were not submitted to the undersigned investigating officer, and the information submitted above was on the basis of an investigation which was made very recently. "It is to be noted that the taxpayer refused to sign Form 872, (Consent Fixing Period of Limitation upon Assessment of Income and Profits Tax) stating in a letter "I wish to state that I do not feel that it would be to my advantage to extend the period of limitation on an additional assessment that might be made." "The recommended assessment is therefore made to protect the best interests of the government. * * *
"The 5% negligence penalty is recommended because of the failure of the taxpayer to keep adequate books and records which would clearly and correctly indicate the income and expenditure of the business." Respondent has disallowed deductions for three exemptions claimed by petitioner Lawrence Fred Zacker as follows: "Deduction for *157 the exemptions of Marcia Zacker, a daughter, Deanna Zacker, daughter, and Jack Zacker, a son, are being disallowed because the taxpayer has failed to submit proof that he is the chief support of these three children who are living in or about Caroll, Iowa, with their mother, who is Lawrence Zacker's former wife. "Investigation, has revealed that Mr. Zacker has sent approximately $50.00 a month in total for the support of these three children which would appear thoroughly inadequate to be the major portion of the support for the three children. By appropriate assignments of error petitioners dispute all adjustments made by respondent. In his brief respondent specifically waived the imposition of fraud penalties as to petitioner Geraldine M. Zacker. Findings of Fact Petitioners are husband and wife and filed separate tax returns for the calendar year 1946 with the Collector of Internal Revenue for the Sixth District of California. Income was reported on a community property basis. The husband referred to above is Lawrence Fred Zacker and will hereinafter sometimes be referred to as the petitioner. The tax return of the petitioner's wife, Geraldine M. Zacker, is affected by *158 all matters in which the petitioner is referred to, except the claim of the petitioner for exemptions for his three children and the question of fraud. From January 1, 1946 until the first part of September in that year, petitioner operated a used car business as an individual and conducted no other business activities during the taxable year 1946. The business was called "Vermont Motor Sales," located at 9235 South Vermont Avenue, Los Angeles, California. In September 1946, the business was dissolved and discontinued. This business originally started as a partnership in the Fall of 1944. After operating as a partnership for three or four months petitioner bought out his partner's interest for $3,000, although the partner had invested only $425. Thereafter, petitioner owned and operated the business by himself. In June 1945, petitioner employed his brother as car buyer, salesman, tune-up man, and handy man on a full-time basis until the business was dissolved. Petitioner paid his brother $3,000 in cash as salary during 1946. Petitioner never had any other employees. This used car business was operated on a lot which had about 66 feet of frontage and 180 feet of length, which *159 could hold about 20 cars and usually had about 15 cars during 1946. A used house trailer served as an office. The lot was in operation 7 days per week, between the hours of 9:00 A.M. and 6:00 P.M. since there were no electric lights. For the use of this unimproved lot an initial rental of $25 per month was required, with $60 per month constituting the maximum rental asked during the time Vermont Motor Sales remained in existence. The only income reported by petitioner or his wife on his 1946 tax return consisted of the profits from Vermont Motor Sales. The net profit as reported on petitioner's tax return was computed as follows: Sales
$47,587.90
Less cost of goods sold
Beginning inventory
$ 4,055.36
Plus purchases
27,214.20
31,269.56
Gross profit
$16,318.34
Less selling & oper. exp.
Reconditioning, etc.
$ 2,146.20
Rent
720.00
Insurance
168.14
Advertising
244.65
Utilities
117.82
Salary
3,000.00
Taxes (Ind. Del WT
1116.00)
1,241.00
Interest
36.97
$ 7,674.78
7,674.78
Net profit
$ 8,643.56
1/2 to Spouse
4,321.78
On this return
4,321.78 Petitioner had no books or records of any kind to support the profit and loss statement *160 above. Petitioner testified that he kept certain records pertaining to Vermont Motor Sales for 1946 until early in 1950, when they were destroyed. Petitioner testified that inasmuch as the business had been entirely discontinued, he did not think there was any necessity to any longer keep these records. Many of petitioner's sales and purchases were handled in cash and large amounts of sales were not reported as income. Petitioner violated regulations of the Office of Price Administration and sold some used cars at higher than O.P.A. ceiling prices. Our task is to compute from the evidence the best we can the amount of net taxable income which should have been reported. A number of separate factors will be considered initially to determine petitioner's total receipts. The only current records presented of petitioner's business activities were the bank's records of his accounts. All the petitioner's banking was done at the California Bank, Manchester and Vermont Branch, in three accounts under the titles of "Vermont Motor Sales," "L. F. or Mrs. L. F. Zacker," and "Lawrence F. Zacker or Geraldine M. Zacker," hereinafter referred to as the "business commercial account," the "personal *161 commercial account," and the "personal savings account," respectively. Only a small proportion of the bank deposits was cash. The deposits in the business commercial account, which was the major account, totaled $76,639.26 between January 1, 1946 and October 18, 1946. During the period in question petitioner received cashier's checks in the amount of $4,136.38 and purchased cashier's checks in the amount of $46,017.09. The total commercial bank deposits and cashier's check transactions do not all represent total receipts since there is some duplication. Of the $46,017.09 cashier's checks purchased, $24,900 were purchased with cash that was not deposited, and the remaining $21,117.09 purchased from funds from the commercial account are eliminated. None of the $4,136.38 of cashier's checks received by petitioner were deposited in the commercial account. Three cashier's checks purchased by petitioner in the total amount of $10,627.50 were subsequently deposited in his business commercial account and an appropriate reduction is made. Amounts totaling $5,231.98 appear both in the debit and credit column of the business commercial account's statement under identical dates and are eliminated *162 since these items are duplicated in the deposit statement. Petitioner had also made deposits in two other bank accounts during 1946, as follows: Personal commercial
$1,137.31
Personal savings account
1,101.00 There were no interbank transfers of funds between the three bank accounts. There were no duplications caused by the purchase or deposit of cashier's checks from these two accounts. Petitioner paid $3,000 in cash as salary to his brother during 1946, and this salary was not accounted for by the bank deposits or cashier's checks. The amount of $6,000 is a reasonable estimate of petitioner's personal living expenses. The charges to petitioner's personal commercial account and personal savings account were $745.50 and $1,919.29, respectively. Assuming that these personal account charges were for personal living expenses, the balance of $3,335.21 living expenses is attributed to cash expenditures as yet not accounted for. The factors above showing total receipts in 1946 may be summarized as follows: Total
Commercial business account:
Receipts
Total deposits
$76,639.26
Minus duplicate debits
and credits
5,231.98
Minus deposits of cash-
ier's checks
10,627.50
Net
$60,779.78
Cashier's checks purchased by cash
24,900.00
Cashier's checks received and not
deposited
4,136.38
Personal commercial account
deposits
1,137.31
Personal savings account deposits
1,101.00
Salary paid in cash
3,000.00
Cash living expenses never deposited
in bank
3,335.21
Total
$98,389.68
*163 Not all of the total receipts computed above can be attributed to sales. Petitioner collected sales tax, and the amounts of such tax remitted to the State of California are not includible in sales. In some sales which were financed, petitioner collected insurance premiums which were turned over to insurance companies. Some amounts were collected and paid out for license fees. Having considered all the factors above, we conclude that $5,000 is a reasonable amount to be deducted from total receipts of $98,389.68 to arrive at total sales of $93,389.68. No evidence was presented and we find as a fact that none of the total receipts above arose from loans, checks made by petitioner and redeposited by petitioner, deposits made to transmit to banks for customers' financing their purchases, and sales made as agents for sellers. On petitioner's tax return he reported total sales of $47,587.90 and cost of goods sold of $31,269.56. We have found above that petitioner's sales were $93,389.68. This figure of total sales should be used instead of the figure $47,587.90 used on the return. Petitioner not only made substantial sales which he did not report, but also did not report all the cost *164 of goods sold. Many of these unreported used cars were purchased by cash. Having considered all the evidence, we find a reasonable estimate of petitioner's cost of goods sold to be $60,000. This figure of cost of goods sold should be used in a recomputation under Rule 50, instead of $31,269.56 as reported by petitioner on his return. Respondent determined that petitioner's deductions for reconditioning costs and property insurance should be $1,073.10 and $151.33, respectively. Having considered all the evidence, we find that petitioner has not complied with his burden of proving that respondent's determinations were not correct. Petitioner had three children by his divorced wife, two girls ages 10 and 8 and a boy age 9. During 1946, the children resided with their mother and her parents in the State of Iowa. Petitioner paid his former wife $625 for the support of the three children. Petitioner has failed to prove that he contributed more than half the support of the three children for 1946. None of the deficiencies in either the case of petitioner Lawrence Fred Zacker or petitioner Geraldine M. Zacker was due to fraud with intent to evade tax. Part of the deficiencies in the *165 case of each petitioner was due to negligence and the imposition of the negligence penalties by the Commissioner under Section 293 (a) of the Code is sustained. Opinion BLACK, Judge: There are a number of separate issues raised here involving primarily whether all the sales of the Vermont Motor Sales used car business were reported in the 1946 tax returns. The petitioner and his wife filed separate returns, each claiming one-half of the income in question. Their right to file their returns on the community property basis is not questioned. Some deductions claimed on the returns are also challenged and negligence penalties were determined against both taxpayers. There are two other questions raised which affect only petitioner Lawrence Fred Zacker, but not the separate return of his wife: whether he knowingly filed a false and fraudulent income tax return and whether he was entitled to claim his three children as exemptions in 1946. Petitioners contend that the 1946 tax returns were correct. Respondent's revenue agent in auditing petitioner's returns rejected the amount of net income reported thereon as being correct because petitioners had no books or records to substantiate *166 the amounts reported on their returns. The agent then used the bank-deposit method and it was upon his report, using that method, that the deficiencies were determined. At the hearing the revenue agent testified at length and in his testimony arrived at figures somewhat higher than those embodied in the original deficiency notices and respondent in amended answers has asked for increased deficiencies. Petitioners on their part, admitting that they have no books and records to substantiate the income reported in their returns, have resorted to the net-worth method to refute the correctness of respondent's determination contained in his deficiency notices. Petitioners, to support their contentions that their net income reported on their returns was substantially correct as shown by the use of the net-worth method, introduced the testimony of a certified public accountant. We have carefully considered the testimony of this accountant but we are not convinced by it. He conceded that petitioners had no books or records which showed their net worth at the beginning of the year 1946 or at its close, and that his computations of petitioners' net worth at the beginning of the year 1946 and *167 at its close were largely based on unverified statements which were made to him by petitioner. After a careful consideration of all the evidence we are convinced that respondent's use of the bank-deposit method is warranted and should be generally approved, though our findings of fact have not agreed to some extent with his findings to gross sales and costs of goods sold. Our essential findings of fact in this respect are that in 1946 petitioner's total sales of used cars was $93,389.68 and that his cost of goods sold was $60,000. These basic figures should be used in a recomputation under Rule 50. Respondent determined that petitioner's deductions for reconditioning costs and property insurance were $1,073.10 and $151.33, respectively, instead of $2,146.20 and $168.14 claimed by petitioner. The only evidence introduced was petitioner's unsubstantiated testimony which is contradicted by his brother's testimony. Since petitioner has not complied with his burden of proof as to these two deductions, respondent's determination is sustained. The last issue, except the ones relating to fraud and negligence, is whether petitioner was entitled to three exemptions for his children by *168 his divorced wife. Petitioner's children, ages 8, 9 and 10, lived with their mother and her parents in Iowa. Petitioner paid $625 to his former wife for support of all three children. The petitioner did not offer evidence as to what the total support of the children was, and it is not possible for us to make a finding from the evidence that $625 constituted half the support for three children. We hold that petitioner has not shown that he has contributed more than half the support of the three children to be entitled to the exemptions claimed under Section 25 (b) (3) of the Code. Fraud Issue In his determinations of the deficiencies respondent did not determine fraud nor impose 50 per cent fraud penalties. Later, however, he amended his answers in each case and made certain affirmative allegations and asked for fraud penalties, as shown in our preliminary statement. Respondent in his brief concedes that he has not established fraud against petitioner Geraldine M. Zacker and he no longer asks fraud penalties as to her. He does, however, still contend that we should find in the case of Lawrence Fred Zacker that part of the deficiency is due to fraud with intent to evade tax and *169 that in his case fraud penalties should be imposed. Section 293 (b) of the Code reads: "SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
"(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612 (d) (2)." The burden of proving fraud by clear and convincing evidence is upon respondent. Fraud is not negligence, however gross, but it is the intentional wrongdoing for the purpose of evading a tax believed to be owing. . In , the Court said: "What constitutes fraud is a question of fact which frequently requires a nicely balanced judgment to answer. To be considered are all of the facts and circumstances surrounding the conduct of the taxpayer's business and all of the facts incident to the preparation of the alleged fraudulent return. The conclusion must be reached not on isolated bits of testimony, but on the whole record. * * *" *170 After a careful examination of all the evidence we are not convinced that respondent has borne his burden of proving fraud. It is true that we have adopted respondent's method of using the bankdeposit method of arriving at petitioner's net income because petitioner has no books and records to show what his net income was. The result of this use of the bankdeposit method shows a net income considerably larger than that shown on petitioners' returns. But just as respondent saw fit, although using the bank-deposit method, not to determine fraud and impose fraud penalties in his deficiency notices, so we think we should not find fraud against petitioner Lawrence Fred Zacker on the strength of the evidence which respondent has offered. Respondent's request for the imposition of fraud penalties against him is not sustained. Negligence Penalties We think the Commissioner's imposition of 5 per cent negligence penalties should be approved against each petitioner. Section 293 (a) of the Code reads: "SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. "(a) Negligence. - If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without *171 intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, except that the provisions of section 272 (i), relating to the prorating of a deficiency, and of Section 292, relating to interest on deficiencies, shall not be applicable." Petitioners have not convinced us that Lawrence Fred Zacker ever kept any books and records which adequately reflected his income and deductions in his used car business. He was clearly negligent in his failure to do so. See . Respondent's imposition of 5 per cent negligence penalties against both petitioners is sustained. It should be noted that the negligence penalty is to be distinguished from the fraud penalty in that the Commissioner's determination will be approved in the absence of evidence showing due care. Cf. . Petitioners have not convinced us that they used due care in the filing of their returns. Hence the Commissioner's determination of negligence penalties against both petitioners is sustained. Decisions will be entered *172 under Rule 50.